IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STACIE MITCHELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CIV-10-1121-C |
| ) | |
| (1) GRADY COUNTY CRIMINAL ) | |
| JUSTICE AUTHORITY; ) | |
| (2) SHANE WYATT, in his individual ) | |
| and official capacities; ) | |
| (3) LARRY CRABB, in his individual ) | |
| capacity; and ) | |
| (4) NOLA COTTRELL, in her individual ) | |
| capacity, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Stacie Mitchell filed suit against Defendants Grady County Criminal Justice Authority ("GCCJA"), Shane Wyatt, Larry Crabb, and Nola Cottrell alleging various federal and state causes of action arising from her employment with and subsequent termination from the GCCJA. Defendants GCCJA, Wyatt, Crabb, and Cottrell filed the present Motion for Summary Judgment seeking judgment in their favor on all of Plaintiff's claims.

I. BACKGROUND

Plaintiff Mitchell worked as a detention officer at the Grady County Jail ("jail") for approximately two years, where Defendant Wyatt served as the warden. (Defs.' Br., Dkt. No. 57, at 4-5.) While working for the jail, Plaintiff underwent surgery requiring a leave of absence from work. (Id. at 7.) On February 2, 2010, Plaintiff contends that she requested extended family medical leave for outpatient surgery from February 10, 2010, to the date of

release to be given by her physician, which Plaintiff claims Defendants Wyatt and Cottrell approved. (Id. at 7.) Defendants argue this first request for leave is fraudulent and was never approved, but offer no substantiating evidence of this contention. (Id. at 7 & n.1.) On February 3, 2010, Plaintiff received an "Employee Disciplinary Notice" stating that she was demoted from sergeant to officer due to alleged violations regarding her attendance and tardiness, which Plaintiff asserts were not legitimate, and employee complaints regarding Plaintiff's performance. (Id. at 8.)

On February 10, 2010, Plaintiff submitted a second emergency leave request for surgery from the same requested date to February 12, a two-day period. (Id. at 8.) On this request, Plaintiff reported her anticipated return-to-work date as "not released by doctor to date." (Id. Ex. 8.) This second request was approved by Defendant Wyatt. (Id. at 9.) On February 12, Plaintiff underwent surgery and was shortly thereafter readmitted to the hospital due to complications. (Pl.'s Br., Dkt. No. 73, at 15.)

Defendants contend that Plaintiff was scheduled to work, but failed to show up for six subsequent shifts from mid- to late-February. (Defs.' Br., Dkt. No. 57, at 9.) On February 18, Sergeant Clayton, Plaintiff's supervisor, issued an Employee Disciplinary Notice due to Plaintiff's absence from work from February 16 through 18. (Id.) On February 22, Sergeant Clayton paged Plaintiff four times requesting that Plaintiff call the jail, to which Plaintiff did not respond—Plaintiff purports that the pager was broken. (Id. at 9.) While Plaintiff did not speak directly with a supervisor during this time, she did call during non-work hours leaving messages about her condition. (Id. at 10; Pl's. Br., Dkt. No. 73, at 8.) Finally, on February

24, Lieutenant Crabb issued a Termination Notice for Plaintiff's alleged absence from work, for six missed shifts, and for her failure to communicate with Defendants. (Defs.' Br., Dkt. No. 57, at 10; Pl.'s Br., Dkt. No. 73 Ex. 14.)

Under Defendants' Employee Handbook, employees may voluntarily terminate their position if they miss two consecutive days work without leave or approval. (Defs.' Br., Dkt. No. 57, at 10.) Plaintiff contends this policy was inapplicable because she continued to be on approved leave during this period and until her doctor released her to work. (Pl.'s Br., Dkt. No. 73, at 7-8.) Plaintiff learned of her termination in late March by receiving a COBRA notification and spoke with Defendant Wyatt over the telephone regarding her termination. (Defs.' Br., Dkt. No. 57, at 10.) During this conservation, Defendant Wyatt informed Plaintiff that she had been terminated, effective February 24, for absenteeism. (Id. at 11.) On April 1, Plaintiff went to the jail to speak with Defendant Wyatt, but ultimately spoke with Cindy Mullen about her termination. Plaintiff also received her final paycheck during this visit. (Pl.'s Br., Dkt. No. 73, at 16.)

Thereafter, Plaintiff brought suit against Defendants GCCJA, Wyatt, Crabb, and Cottrell based on the following six causes of action: (1) interference with her rights under the FMLA; (2) retaliation for use of entitled leave under the FMLA; (3) violation of her First Amendment rights under the Civil Rights Act; (4) wrongful discharge in violation of Oklahoma public policy; (5) failure to pay owed compensation under 40 Okla. Stat. § 165.1; and (6) breach of contract for failure to pay benefits.

## II.  STANDARD OF REVIEW

Summary judgment is proper if the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Under the summary judgment standard, a mere factual dispute will not preclude summary judgment; instead there must be a genuine issue of material fact." Cooperman v. David, 214 F.3d 1162, 1164 (10th Cir. 2000).  The party seeking summary judgment bears the initial burden of demonstrating the basis for its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citation omitted).  A fact is material if it affects the disposition of the substantive claim.  Anderson v. Liberty Lobby, Inc., 477 U.S. 247 (1986).  A court considering a summary judgment motion must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party.  Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1225 (10th Cir. 2000).

If a party does not sufficiently support its own asserted facts or address the other party's asserted fact, a court may allow "opportunity to properly support or address the fact . . . consider the fact undisputed for purposes of the motion . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . or issue any other appropriate order." Fed. R. Civ. P. 56(e).


### III.  DISCUSSION

#### A.  Family Medical Leave Act Claims

The Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2612 et seq., ensures that employers allow employees up to twelve weeks of leave in one year for enumerated purposes, including serious health conditions that interfere with the employee's ability to perform at work.  29 U.S.C. § 2612(a)(1).  Pursuant to this Act, employers may be liable under distinct theories of recovery if they interfere with an employee's rights under the Act or retaliate against the employee for invoking their rights under the Act.  Metzler v. Fed. Home Loan Bank of Topeka, 464 F.3d 1164, 1170 (10th Cir. 2006). Plaintiff asserts Defendants violated both prohibitions.

#### 1.  FMLA Interference

To establish an FMLA-interference claim, an employee must prove the following elements:  (1) that she was entitled to FMLA leave; (2) that the employer took some adverse action that interfered with that entitlement; and (3) that the employer's action was related to the exercise or attempted exercise of the employee's FMLA rights.  DeFreitas v. Horizon Inv. Mgmt. Corp., 577 F.3d 1151, 1159-60 (10th Cir. 2009).  If an employer interferes with an employee's "FMLA-created right to a medical leave, it has violated the FMLA regardless of its intent."  Bones v. Honeywell Int'l, Inc., 366 F.3d 869, 877 (10th Cir. 2004).  As a defense against an employee's FMLA-interference claim, an employer can show that "'the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave.'"  DeFreitas, 577 F.3d at 1160 (quoting Metzler, 464 F.3d at 1180 ("The burden to demonstrate

that 'an employee, laid off during FMLA leave, would have been dismissed regardless of the employee's request for, or taking of, FMLA leave' is on the defendant-employer.")) (quoting Smith v. Diffee Ford-Lincoln-Mercury, Inc., 298 F.3d 955, 962 (10th Cir. 2002)). However, termination while the employee is on leave has "significant probative force." DeFreitas, 577 F.3d at 1160 ("Whenever termination occurs while the employee is on leave, that timing has significant probative force."); Smith, 298 F.3d at 961.

Defendants do not contest that Plaintiff was entitled to take FMLA leave. And, by terminating Plaintiff's employment, Defendants interfered with Plaintiff's right to take up to twelve weeks leave, pursuant to § 2612(a)(1), and "denied her the right to be reinstated to her former position or an equivalent one upon her return to full-time work." Metzler, 464 F.3d at 1181; (Defs.' Br., Dkt. No. 57, at 12; Pl.'s Br., Dkt. No. 73, at 16.)  Rather, Defendants argue that Plaintiff's claim fails because she was fired due to her absenteeism from work, complaints about performance, and failure to follow the proper procedure to request leave. Specifically, Defendants point to Plaintiff's attendance and several missed shifts after her surgery as the basis for her demotion and termination. (Defs.' Br., Dkt. No. 57, at 17-19.) Plaintiff argues that she was on approved leave and followed the proper procedure to request this leave by filling out two request-for-leave forms: the first, which Plaintiff contends she created on February 2, states that she requests time off from February 10 until she is released by her doctor to return to work; the second, which Plaintiff submitted on February 10, requests February 10 through February 12 off and under the form's "Date of Return to Work" section states "not released by doctor to date." (Defs.' Br., Dkt. No. 57

6

Exs. 7-8.) Defendants argue that the February 10 request negates the open-ended nature of the February 2 request and, therefore, that Plaintiff failed to adhere to the proper procedure.

However, both forms indicate that Plaintiff would need to be released by her doctor prior to returning to work and place into doubt the parameters of Plaintiff's requested and actual leave period. Because a material issue of fact remains disputed regarding whether Plaintiff complied with the absence policy and was in fact on approved leave, summary judgment in Defendants' favor is inappropriate. Cf. Bones, 366 F.3d at 878 (finding that the plaintiff failed to adhere to employer's policy for absentee dates that led to termination).

2.  FMLA Retaliation

Section 2615 prohibits employers from retaliating against employees who invoke their statutory rights under the FMLA. 29 U.S.C. § 2615. Retaliation claims under the FMLA are subject to the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this framework, the plaintiff must first establish a prima facie case of unlawful retaliation. To establish a prima facie FMLA retaliation claim, an employee must demonstrate the following elements: (1) that she engaged in a protected activity; (2) that the employer "'took an action that a reasonable employee would have found materially adverse'"; and (3) that "'there exists a causal connection between the protected activity and the adverse action.'" Campbell v. Gambro Healthcare, Inc., 478 F.3d 1282, 1287 (10th Cir. 2007) (quoting Metzer, 464 F.3d at 1171).

Once the plaintiff has established the prima facie case, the burden shifts to the employer to establish legitimate, nondiscriminatory reasons for the action taken. If the

employer satisfies this standard, then the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's reasons are a pretext for unlawful retaliation. Johnson v. Weld Cnty., Colo., 594 F.3d 1202, 1211 (10th Cir. 2010).

Pretext is established by showing "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'" Jones v. Okla. City Pub. Sch., 617 F.3d 1273, 1280 (10th Cir. 2010) (quoting Jaramillo v. Colo. Judicial Dep't, 427 F.3d 1303, 1308 (10th Cir. 2005)). It is not the court's role to determine whether an employer's decision was "'wise, fair or correct, but whether [it] honestly believed [the legitimate, nondiscriminatory] reasons [given] and acted in good faith upon those beliefs.'" Rivera v. City & Cnty. of Denver, 365 F.3d 912, 925 (10th Cir. 2004) (first alteration in original) (quoting Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1318 (10th Cir. 1999), overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002)).

Here, Plaintiff has sufficiently established a prima facie case of retaliation to shift the burden to Defendants to establish a legitimate, non-retaliatory reason for the employment action: Plaintiff requested leave under the FMLA for a serious medical condition and asserts that she was on such approved leave when terminated and demoted the day after requesting such leave. A reasonable employee would find such actions materially adverse, and the "'termination [was] *very closely* connected in time to the protected activity'" such that this proximity may "'justify an inference of retaliatory motive.'" Metzler v. Fed. Home Loan

Bank of Topeka, 464 F.3d 1164, 1171 (10th Cir. 2006) (quoting Anderson v. Coors Brewing, 181 F.3d 1171, 1179 (10th Cir. 1999), and Haynes v. Level 3 Commc'ns, LLC, 456 F.3d 1215, 1228 (10th Cir. 2006)).

As proffered legitimate, non-retaliatory reasons for the employment actions, Defendants contend that Plaintiff was demoted due both to absenteeism and complaints by her inferiors regarding her attitude, and Plaintiff was terminated due to her failure to communicate with her supervisors or report to work after her surgery. See Metzler, 464 F.3d at 1172. To survive summary judgment, Plaintiff bears the burden of establishing that there remains a genuine disputed material fact as to whether Defendants' reasons for termination are pretextual. Plaintiff admits that she did not speak directly with her supervisors during this period. Instead, Plaintiff offers the following as evidence of pretext: the temporal proximity of her termination and demotion; her attempts to contact Defendants; and her contention that Defendants violated policy by not calling Plaintiff at her home. (Pl.'s Br., Dkt. No. 73, at 27-28; Defs.' Br., Dkt. No. 57 Exs. 7-8.) Medina v. Income Support Div., 413 F.3d 1131, 1138 (10th Cir. 2005) (finding that temporal proximity alone is not sufficient to establish pretext). However, Plaintiff does not contest that Defendants attempted to reach her by paging Plaintiff prior to her termination. Nor does Plaintiff dispute that her attendance prior to her request for leave was waning. (Defs.' Br., Dkt. No. 57 Ex. 3, at 196 ("Q. Right. But afterwards you had some problems with your attendance? A. Everybody does, yes. Q. All right. And you could see how a reasonable supervisor might identify— A. Correct. Q.

9

—that problem with attendance; right? I mean, in fairness you can see how somebody might say wow, you've changed? A. Correct.").)

Because Plaintiff has not provided sufficient circumstantial evidence to demonstrate that Defendants' proffered reasons are pretextual, summary judgment on Plaintiff's retaliation claim is warranted. See Metzler, 464 F.3d at 1172-73 (finding that the plaintiff's circumstantial evidence—including a pattern of retaliatory conduct, the defendant's prior treatment of the plaintiff, defendant's actions contrary to handbook policy, defendant's documentation of plaintiff's file in anticipation of litigation—in addition to the temporal proximity, was insufficient to show pretext).

Finally, the parties dispute whether individual employees of public agencies may be held liable under the FMLA. The crux of the issue depends upon whether the employee-liability clause of § 2611(4)(A)(ii)(I) applies to employees of public agencies or only employees of private employers. Currently, the Circuits are split regarding this issue and the Tenth Circuit has yet to definitively take sides. Compare Modica v. Taylor, 465 F.3d 174, 184-86 (5th Cir. 2006) (finding that individual public employees fall within (ii)(I) and may be liable), and Darby v. Bratch, 287 F.3d 673, 680-81 (8th Cir. 2002) (same), with Mitchell v. Chapman, 343 F.3d 811, 832 (6th Cir. 2003) (finding that individual public employees do not fall within (ii)(I) and may not be liable), and Wascura v. Carver, 169 F.3d 683, 687 (11th Cir. 1999) (same). See Gray v. Baker, 399 F.3d 1241, 1246-47 (10th Cir. 2005) (finding that court lacked interlocutory appellate jurisdiction over issue of whether

individual public employees may be liable under FMLA); Cornforth v. Univ. of Okla. Bd. of Regents, 263 F.3d 1129, 1135 (10th Cir. 2001) (same).

In Jeffers v. Redlands Community College Board of Regents, the court found that the arguments of the Eighth and Fifth Circuits were more persuasive and that "the statute's definition of 'employer' [was] inclusive and subsections (ii) and (iii) should be read together." Jeffers, No. CIV-11-1237-HE, 2012 WL 137412, at *2 (W.D. Okla. Jan. 18, 2012); see also Cantley v. Simmons, 179 F. Supp. 2d 654, 656 (S.D. W. Va. 2002) ("While some district courts have decided otherwise, the majority of district courts have concluded that public employee supervisors can be sued individually under the FMLA."). The Court agrees with this reading. Accordingly, Defendants' requested summary judgment on this issue is not warranted.

B. First Amendment Claim

Plaintiff asserts that Defendants violated her freedom of speech when they "retaliated" against her for complaining about compensation discrepancies, safety concerns, lack of training, lack of equipment, and state regulatory compliance issues. To determine whether Plaintiff's speech is protected, the pivotal issue is whether her statements were made pursuant to her role as a jail supervisor or as a concerned citizen. The Tenth Circuit uses the Garcetti-Pickering[1] analysis to determine the scope of an employee's protected speech:

---

[1] See Garcetti v. Ceballos, 547 U.S. 410 (2006); Pickering v. Board of Educ., 391 U.S. 563 (1968).

> "First, the court must determine whether the employee speaks pursuant to his official duties. If the employee speaks pursuant to his official duties, then there is no constitutional protection because the restriction on speech simply reflects the exercise of employer control over what the employer itself has commissioned or created. Second, if an employee does not speak pursuant to his official duties, but instead speaks as a citizen, the court must determine whether the subject of the speech is a matter of public concern. If the speech is not a matter of public concern, then the speech is unprotected and the inquiry ends. Third, if the employee speaks as a citizen on a matter of public concern, the court must determine whether the employee's interest in commenting on the issue outweighs the interest of the state as employer. Fourth, assuming the employee's interest outweighs that of the employer, the employee must show that his speech was a substantial factor or a motivating factor in a detrimental employment decision. Finally, if the employee establishes that his speech was such a factor, the employer may demonstrate that it would have taken the same action against the employee even in the absence of the protected speech."

Couch v. Bd. of Trs. of Mem'l Hosp., 587 F.3d 1223, 1235 (10th Cir. 2009) (quoting Brammer-Hoelter v. Twin Peaks Charter Acad., 492 F.3d 1192, 1202-03 (10th Cir. 2007)). Implicit within this five-prong analysis "'is a requirement that the public employer have taken some adverse employment action against the employee.'" Id. at 1236 (quoting Belcher v. City of McAlester, Okla., 324 F.3d 1203, 1207 n.4 (10th Cir. 2003)).

Whether an employee's speech was within that employee's job duties is a "practical" inquiry. Thomas v. City of Blanchard, 548 F.3d 1317, 1323 (10th Cir. 2008). "[A] court cannot simply read off an employee's duties from a job description because 'formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform.'" Id. (quoting Garcetti, 547 U.S. at 424-25). "[I]f an employee engages in speech during the course of performing an official duty and the speech reasonably contributes to or

facilitates the employee's performance of the official duty, the speech is made pursuant to the employee's official duties." Brammer-Hoelter, 492 F.3d at 1203-04.

Defendants contend that Plaintiff spoke pursuant to her role as a jail supervisor. Despite Plaintiff's argument that it was not her job to ensure the inmates received proper medical care or that the jail was properly staffed, all of the issues raised in Plaintiff's complaints reasonably contribute to or facilitate her performance as a jail supervisor: As a supervisor, Plaintiff was responsible for overseeing other employees, which necessarily entails observing and correcting employees' conduct, as well as responding to and reporting observed issues with the functioning of the jail. (Defs.' Br., Dkt. No. 57 Ex. 3, at 67-68; Pl.'s Br., Dkt. No. 73, at 12 (stating that "[a] sergeant is a shift supervisor who oversaw all of the detention officers on the shift. Sergeants had the authority to make certain decisions if there was an incident, were responsible for answering the detention officers' questions and aided in ensuring the policies were followed.").) Indeed, Plaintiff reported these issues to her supervisors and agreed that her official duties included responding to and reporting problems with the jail's operation. (Defs.' Br., Dkt. No. 57 Ex. 3, at 67-68.) Because Plaintiff's speech was made pursuant to her role as a jail supervisor, not as a concerned citizen, her speech is unprotected. Accordingly, Defendants are entitled to summary judgment on Plaintiff's First Amendment claim.

Defendants argue that Plaintiff's Burk tort claim fails for the same reasons that her First Amendment claim fails, but provide no argument or substantiation that this is the only

underlying public policy for Plaintiff's Burk tort claim.[2]  See Brock v. Thompson, 1997 OK 127, ¶ 16 n.33, 948 P.2d 279, 288 n.33 (finding that the state constitutional protections regarding freedom of speech, under Okla. Const. art. 2, § 22, are broader than the federal protections).  As the movants, Defendants bear the burden of establishing that they are entitled to a ruling as a matter of law, which they have not done regarding Plaintiff's Burk tort claim.  Therefore, summary judgment on this claim is inappropriate.

C.  Breach of Contract Claim

Plaintiff asserts a breach of contract claim against Defendant GCCJA claiming that it failed to pay agreed-to compensation and health insurance.  Specifically, Plaintiff contends that Defendant GCCJA did not pay Plaintiff's health insurance premium or retirement benefits for February 2012.  Defendant GCCJA points to the absence of any contract between it and Plaintiff as the basis for summary judgment on this claim.  While Plaintiff agrees that

---

[2] In Burk v. K-Mart Corp., 1989 OK 22, 770 P.2d 24, the Oklahoma Supreme Court created an exception to its general rule of at-will employment by recognizing a cause of action for wrongful discharge in violation of public policy.  Wilburn v. Mid-S. Health Dev., Inc., 343 F.3d 1274, 1277 n.2 (10th Cir. 2003).  Generally, "employers are free to discharge at-will employees in good or bad faith, with or without cause," but the Burk tort allows an at-will employee to sue for wrongful discharge in violation of public policy.  Darrow v. Integris Health, Inc., 2008 OK 1, ¶ 3, 176 P.3d 1204, 1210.  To state a claim for wrongful discharge under the public policy exception to at-will employment, a plaintiff must allege

> (1) an actual or constructive discharge (2) of an at-will employee (3) in significant part for a reason that violates an Oklahoma public policy goal (4) that is found in Oklahoma's constitutional, statutory, or decisional law or in a federal constitutional provision that prescribes a norm of conduct for Oklahoma and (5) no statutory remedy exists that is adequate to protect the Oklahoma policy goal.

Vasek v. Bd. of Cnty. Comm'rs of Noble Cnty., 2008 OK 35, ¶ 14, 186 P.3d 928, 932.

she was an at-will employee and that no contract was executed, she continues to assert this claim.

Under Oklahoma law, an implied contract can be formed between employers and at-will employees, which is typically a factual question, unless the alleged promises are nothing more than vague assurances. See Miner v. Mid-Am. Door Co., 2003 OK CIV APP 32, ¶ 33, 68 P.3d 212, 221 (noting that "implied contractual provisions may restrict an employer's freedom to discharge an employee at will, and that such restrictions may arise from employee manuals, oral assurances, and the like"); Gabler v. Holder & Smith, Inc., 2000 OK CIV APP 107, ¶ 24, 11 P.3d 1269, 1275. Cf. Bowen v. Income Producing Mgmt. of Okla., Inc., 202 F.3d 1282, 1284-85 (10th Cir. 2000) (finding that "[e]mployer guarantees are merely 'vague assurances' unless they place *substantive restrictions* on the reasons an employer may terminate an employee.").

Pursuant to Oklahoma law, the following factors are weighed in determining whether an at-will employee and employer had an implied contract: "(a) evidence of some 'separate consideration' beyond the employee's services to support the implied term, (b) longevity of employment, (c) employer handbooks and policy manuals, (d) detrimental reliance on oral assurances, pre-employment interviews, company policy and past practices and (e) promotions and commendations." Hinson v. Cameron, 1987 OK 49, ¶ 14, 742 P.2d 549, 554-55. While these factors are weighed in making this inquiry, they need not each be proven in order for a court to find an implied contract. Id.

Besides generally stating that Plaintiff and GCCJA agreed that it would pay health insurance and compensation, Plaintiff offers no support for her contention that a contract—either actual or implied—was formed between the two parties. In fact, Plaintiff agrees that she was an at-will employee. Consequently, Plaintiff's claim of breach of contract necessarily fails, and Defendants are entitled to summary judgment on this claim.

In addition to seeking recovery of unpaid wages by alleging breach of contract, Plaintiff also claims that she is owed additional wages pursuant to Oklahoma statute. 40 Okla. Stat. § 165 et seq. Defendants argue that they are entitled to summary judgment on this claim because Plaintiff produces only a self-created chart establishing that she is owed additional pay for overtime performed and for an owed, but unpaid, paycheck. Additionally, Cindy Mullen, Defendants' employee in charge of payroll, testified that Plaintiff has been paid all that she was owed. (Defs.' Br., Dkt. No. 57 Ex. 11, at 34-35 ("Q. When Ms. Mitchell was terminated, was she owed any vacation, sick, or salary? A. Salary, yes. Q. Okay. And was that paid to her when she picked up that paycheck on April 1st? A. Yes.").)

Again, beyond her assertions that she is owed more money, Plaintiff provides no support for her claim that she is owed additional money beyond her general citation to Exhibit 19 in her response brief, which consists of over sixty different pay stubs and time sheets. (Pl.'s Br., Dkt. No. 73, at 17 ("The minimum amount is determined by figuring Mitchell's hourly rate and multiplying it by the number of hours worked, then offsetting any amount due to GCCJA.").) Plaintiff makes no attempt to cite which among these documents substantiates her claim that she is owed approximately $1,131.67 in unpaid overtime and

$232.75 in compensation, and the Court will not, and could not, endeavor to glean from these documents how Plaintiff reached these conclusions. Hauff v. Petterson, 755 F. Supp. 2d 1138, 1150 (D.N.M. 2010) ("Nor is it the court's function to 'scour the record in search of evidence to defeat a motion for summary judgment.'" (quoting Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996))).[3] Because Plaintiff has not sufficiently supported her asserted facts, however, her claim for overtime and owed wages cannot survive summary judgment.

## IV. CONCLUSION

For the above-stated reasons, Defendants' Motion for Summary Judgment (Dkt. No. 57) is PARTIALLY GRANTED as to Plaintiff's FMLA retaliation, First Amendment, unpaid wages, and breach of contract claims, and DENIED as to all remaining claims. A judgment shall enter at the conclusion of the case.

IT IS SO ORDERED this 4th day of June, 2012.

ROBIN J. CAUTHRON
United States District Judge

---

[3] Plaintiff additionally claims her paycheck was not timely tendered. See 40 Okla. Stat. § 165.3 (providing that "[w]henever an employee's employment terminates, the employer shall pay the employee's wages in full . . . at the next regular designated payday . . . ."). Defendants do not address this claim in their Motion. (Defs.' Br., Dkt. No. 57, at 30.)